May it please the Court, Caroline Sincada for Petitioner Binbin Yang. The adverse credibility determination in this case was flawed by several significant errors of law that have to be corrected. Mr. Yang testified that he was detained for 15 days. If you have to speak up, I will, but even my hair moans. Okay. I'm having trouble following you, so please speak right into the microphone. Okay. Mr. Yang testified that he was detained for 15 days and that the police have continued to look for him at his home in China. The IJ didn't specifically find that he contradicted himself as to that testimony, but did base an adverse credibility determination on a number of other factors in the record. There's three basic points I'd like to get to today, and the first is that Mr. Yang's misstatement that he last spoke with his girlfriend in November 2004 cannot support an adverse credibility determination, because he wasn't asked about that inconsistency as is required by this Court's case law. Second, the lack of the abortion notice also cannot sustain an adverse credibility finding, because the IJ did not address Mr. Yang's explanation for not having that notice, and because lack of a document doesn't go directly to credibility, but rather to whether an individual has met their burden of proof. Finally, the other two grounds that the IJ relies on simply have no basis in the record, as the government essentially recognizes in not having tried to defend them in their brief. Aren't you forgetting a couple? The IJ gave your client an opportunity to explain the perceived inconsistency regarding when he last saw his fiancée. That was not brought up by you before the BIA, and yet when you read the record, I have a copy of here, this is supposed to be somebody with whom he's having a child. He seems to have no clue when he last saw her. That seems to go a bit to the heart of the case. Then you have the IJ's conclusion that corroborating evidence about the abortion notice was reasonably available, and yet he said he wouldn't contact his mother to get that evidence where he said it was, even though she was aware, according to the record, that he was being held in an ICE jail, basically pending a resolution of the issue. Aren't those two issues that the IJ was entitled to rely upon in terms of adverse credibility? Well, actually, those are the first two issues I'd like to talk about. Excellent. And as to November of 2004, Your Honor, the IJ actually did not, as required by this Court's case law, ask Mr. Yang about that inconsistency before making her adverse credibility finding. And I, you know, the case law is very clear here, beginning with Chen, which is cited in the briefs, and most recently Soto Elarte, that simply a general opportunity to supplement the record actually isn't enough to satisfy the case law. Can I understand? I want to be sure I understand you correctly, Ms. Sincada. You said that the IJ didn't ask about it, or he didn't give your client an opportunity to respond, or what? Actually, the case law requires that it be specifically brought to his attention as an inconsistency. If you look at Soto Elarte, that was a case where the inconsistency was totally glaring between a police report that was submitted. Let me just read you this little teeny snippet here from the record. This is from AR 99 through 100. The IJ said, and when was the last time you spoke to your girlfriend or had any communication with her? Yang, that time she was pregnant, that she told me she was pregnant. IJ, that was the last time you spoke to her. Yang, yes, the most recent time. IJ, and when was that? November 2004. Then the IJ asked both counsels if they had any further questions. They both said no. Then Yang later acknowledged the inconsistency between that and the fact that he had told that he could not have been present when the authorities came to tell her to abort in February of 2005. So you've got a gap there of roughly three months. Now, counsel was advised. They talked about it. There was a discussion about it. What does not satisfy our case law in that sense? Counsel was advised that they could ask any further questions for the witnesses, but if you look at Soto Olarte, the most recent case, the petitioner there was clearly aware of the inconsistency. The petitioner, in fact, submitted an affidavit addressing one of the inconsistencies between his police report and his testimony, and this court said that that was insufficient. That general opportunity to supplement the record, to correct the inconsistency was not enough where the IJ didn't explicitly flag that inconsistency and ask the petitioner about it. The court did ask him more than once and his counsel whether he wanted to clarify it. He was actually not asked whether he wanted to clarify that issue. He was at the end of all testimony. The judge said, are there any further questions for this witness, which happens at the end of every immigration court hearing. But aren't you skipping the reference at page 100? I'm looking at page 100. Did the judge ask him whether he wants to clarify this issue? No, he doesn't ask do you want to clarify this issue. The government, he asked specifically are there any further questions for this witness. So there actually is no point at which that inconsistency is flagged, and I think that this Court's case law is very clear that it had to be. So you're saying that if there's an inconsistency of this nature, a three-month gap, the last time he sighs his girlfriend and the time that the government gave her a notice that she had to be aborted, which goes to the heart of Price's claim, obviously, this abortion issue. The government asked whether anybody had any questions. You're saying that our case law requires that the I.J. do what? The case law requires that it's not apparent that it was flagged for Mr. Yang that this was an inconsistency and that the judge was concerned about it, and it was the responsibility of the judge. It's not intended to be a game of culture. And what case law are you referring to? I'm specifically referring to there's a number of cases, but there's Chen, there's Guo. Those are cited in the record. And he wasn't given a chance to explain that inconsistency. I think that's the key. Counsel, there was another opportunity to explain the inconsistency or at least to make this objection, and Judge Smith has referred to that once, which is that you could have taken that question to the BIA and you did not brief it to the BIA. It's true, Your Honor, that there was the possibility to offer an explanation at the BIA. Well, not just offer an explanation, but you could have protested. You could have raised Guo and Chen to the BIA and said this was error by the IJ, and you've got to send this back. Well, I think it's – You didn't raise that point before the BIA, so it's coming up here for the first time without the BIA ever considering that problem. Well, Your Honor, I think there's two issues there. The first is that the failure to offer a further explanation to the BIA doesn't change this Court's case law. And so tolarte, they noted that he had an opportunity to offer an explanation before the BIA, and the fact that he didn't didn't prevent them from granting the petition. But you haven't exhausted the issue, though. Right. Well, Your Honor – Judge Biby's raising. I understand that. And actually, our position is that Mr. Ying has exhausted this issue. Mr. Ying states at AR-6 and at AR-14 in the record that the IJ's adverse credibility finding is not supported by substantial evidence. And there is no case in this – Okay. I'm looking – is that page 3 of the brief to the – okay, that's just the statement of the issues. That's correct, Your Honor, but – But whether the immigration judge's adverse credibility finding is supported by substantial evidence is about as general a statement of an issue as you could possibly get. How was the BIA supposed to know that it needed to make a decision under Guo and Chang, or Chan that you cited, as to whether the IJ had done its job? Well, this Court's case law has never required more than that to exhaust the question of an adverse credibility determination or require that an individual case be cited. In Chang, which is – Yes, but if you can't get beyond that level of abstraction to the BIA, how is the BIA supposed to be on notice? That is a boilerplate statement of the issue. Well, if you look at Chang, Your Honor, this Court has said that stating, for example, I request that the BIA overturn the IJ's denial of cat relief is sufficient to raise the question of cat relief before the BIA. And all arguments that are then raised in this Court of Appeals are exhausted. The requirement is that they be put on notice. But by that same logic, someone in a trial before a district court could just stand up and say, I object to all of the evidentiary rulings that the Court has made, and that's enough? That's actually not what was said here. He didn't object to every evidentiary ruling. He objected to the adverse credibility determination. Okay, well, let's limit it to that then. And the reality is it is, as Judge Bybee indicated, a boilerplate blanket statement that does not notify the BIA of the alleged discrepancy. I think that's not consistent with this Court's case law in Chang, in Moreno-Mirante, and Vizcarra-Ayala, which are listed, which that it's sufficient to put the Court on notice that the adverse credibility determination was challenged. And the fact that he then chose to provide some details and not others about his argument doesn't serve to unexhaust. How about the issue of the notice of the abortion that was at his house in China, and he didn't want to worry his mother? As to the abortion notice, this Court's case law is very clear that the IJ is obligated to address a petitioner's explanation. And that's the case law both as to credibility and corroboration. And it's true in other courts as well that dealt with, that had adopted the SMJ rule prior to the REAL-ID Act, that there is an obligation to address the explanation. And so if you look at the IJ's actual opinion, she never addresses his explanation that his mother, that he did not actually receive documents directly from his mother prior to this, nor his explanation that his mother is older and rarely leaves the house. Neither of those explanations are addressed here. And that enough is a legal error that requires that this case be sent back. In addition, you know, as a separate matter, an entirely distinct matter, the statute makes very clear that corroboration goes to burden of proof rather than credibility, unless there's an explicit finding that the explanation is a lie. And that didn't happen here. As a result, the case has to be sent back for an evaluation of burden of whether or not the corroboration affects the burden of proof rather than his credibility. So those are the issues. I'm sorry, I forgot to indicate that I wanted to reserve time. But obviously that's already decided. I will allow you for a minute to respond to the government. Thank you very much. Thank you. May it please the Court, my name is John Eccleston. I'm presenting arguments on behalf of the United States. Your Honors, in this immigration case, the Court should affirm the agency's denial of petitioner's application, because substantial evidence in the record supports the agency's adverse credibility determination.  The petitioner was a stowaway, is that right? That is correct, Your Honor. How old was he, by the way? Excuse me? How old was he? Age, do you remember? I believe he was 22, but I could be off by a year, Your Honor. The explanation of why he came to the United States was a little bit vague. Is that your position? It was inconsistent, Your Honor. He had three different explanations. What did he say? The first time he was interviewed, he said he came on the boat because he wanted to make money. He later said he came fearing persecution as a Buddhist. And then later he said it was all about family planning. That's correct, Your Honor. Three totally separate. I understand. That's what I thought. Yeah. What's the government's response to Ms. Senkota's argument that our case law requires an IJ to basically, if there is an inconsistency, to specifically call out that inconsistency in detail and give the petitioner an opportunity to rebut that? Is that your reading of our case law? No, and especially not in this situation, Your Honor. First off, the IJ did call it out. As Your Honor read the testimony earlier, the immigration judge basically asked the same question three different times in three different ways, fully providing the petitioner an opportunity to correct himself. There's no obligation under our case law, is there, for the IJ to say something to the effect that, I want you to note that I see an inconsistency here. Would you like to comment about it? That's correct, Your Honor. Okay. And as said earlier also, the IJ did ask if counsel wanted to take up the issue with further questions. Counsel, why shouldn't the IJ have allowed Mr. Yang an opportunity to get the abortion documents? Excuse me? Why shouldn't the IJ have given Mr. Yang an opportunity to request the abortion documents? Wouldn't that have sort of settled a lot of this? If he couldn't come up with it, then we've got a real problem. If he could come up with it, then it looks like maybe he was telling the truth. Well, he already had the opportunity to get those, Your Honor. Well, he could have done it on his own. But the IJ could have also, or to continue, said, look, I'm going to give you a month to come up with this document and then come back before me. If you haven't got it, then my decision is going to be pretty firm here. In theory, but Petitioner also said that Petitioner expressed that he was averse to trying to get the documents. If he had known that everything turned on whether he could get the document or not, he might have made another effort. I mean, that's potentially the case, Your Honor, but Petitioner never expressed that. He never said to the immigration judge, excuse me, that if I have had the opportunity now to try to go get that, I will. And further, to the extent that it was available, to the extent that he could have, even the day after the immigration judge issued his opinion, Petitioner could have called, tried to get the document, and filed a motion to reopen. I'm not saying that DHS would have. But nobody's even done it. But it wasn't done. To date, there's no evidence that he still got the document in the United States. There's no evidence before that in the government's position. Counsel, my recollection of the record is that Mr. Yang specifically stated that the notice was in his house in China, but he didn't want to worry his mother by asking her to send the letter. Am I mistaken in that? That is correct, Your Honor. Okay. And if that is correct, was he not given, he understood he needed to get the document. He just said, I want to get it because I don't want to bother my mother or worry her. That's correct, Your Honor. Okay. Thank you. So those are, I mean, those are basically the three basis for the, the major basis for the adverse credibility determination. The one thing I just would want to point out to the Court, that this is a real ID case. So even though these determinations do go to the heart of the matter, the standard here is the totality of the circumstances, which is an easier standard to follow for the government. If there's nothing further, Your Honor, for the foregoing reason to this government's position that the Court should deny the petition for review. Okay. Thank you. Thank you. Ms. Sincott, we'll allow you a minute. And maybe you could answer a question following up on the government's argument. To date, has Mr. Yang obtained this document? My representation is limited to this appeal, and it's not in the record whether he obtained the document. But as far as you know, nobody's ever gotten this document. Nobody's prepared to file a motion to reopen with the BIA. Nobody's made any second attempt to. I can't speak to that, Your Honor. Your Honor, I do know that the document exists and that Mr. Yang is interested in pursuing this petition for review, and there are limitations. But do you know the document exists because your client told you that it exists or because you've seen the document? I can't speak to that further. You believe it exists because your client told you that the document exists. I can only speak to what's in the record, Your Honor. Sounds like Descartes. I think. Therefore, I am. Well, I have obligations to my client, and I can speak to what's in the record. And, you know, he wishes for an opportunity to present all necessary evidence once this petition is granted. What do we do with the inconsistencies at the time that he's picked up at the shipyards? Well, I think the case law is very clear, both in the immigration context and in other contexts, that an agency can't be affirmed on a ground on which it didn't rely. And the IJ didn't rely on that inconsistency at all in making her decision. She never indicated that she found his explanation that he was in tremendous pain was not credible, and it's simply not a part of her decision in this case. And that's very clear. You know, as to exhaustion, the last thing I'll say about it is that this Court's case law is extremely clear, that stating that he challenged the adverse credibility determination was sufficient. You can look at Zhang, Vizcarayala, Moreno, Morante. Aguilera-Cota is also cited in the briefs, which was a case where a petitioner challenged the burden of proof, the IJ's finding on burden of proof below, and that's all he said. And they said that was enough to challenge the entire adverse credibility determination, which was the basis for the burden of proof determination. So that, you know, that is, this Court has held that that is sufficient to put the BIA on notice, and that citing specific cases is not, you know, is certainly not required. I'm delighted to know that anyone finds our immigration law clear. Well, yeah, I do think that particular aspect of this Court's law is very clear. And in terms of the inconsistency, it is also quite clear the inconsistencies in Soto-Alarte were also glaring, and many opportunities were given to correct them. But it's not intended to be a gotcha moment. It's not apparent from the dry record that Mr. Yang understood that he had misspoken or that the IJ was concerned about it and he wasn't given an opportunity to explain. And finally, you know, as Judge Bybee pointed out, he wasn't, this is not a case where there were many continuances to get documents. Mr. Yang had one month in which to get to the abortion notice, in which he could have gotten any documents at all. He was not aware that the abortion notice was going to be necessary, and he wasn't asked whether he could get it. And, you know, that's not, that's what happened in this case. And finally, just in some, you know, some of these rules that the Ninth Circuit has for IJs, that they have to ask these specific questions, that they have to respond very explicitly to explanations, you know, may seem very onerous. But the fact is it's because IJs aren't like other adjudicators. Once they make their proper determination at the end, it's entitled to a significant amount of deference. But until that happens, until these, you know, until explanations are asked for and addressed, deference is not due. And that's, you know, that's, is how it works under this Court's case law, and that's why the petition has to be granted. Thank you very much, Ms. Sakata. We appreciate the argument from both counsel. Ms. Sakata, you and your associates, I believe, were pro bono on this case, and the Court very much appreciates your efforts. Your client was very well represented. Thank you. Well, thank you. With that, the Court is going to take a very brief recess, and we'll resume in just a few minutes. Bye-bye. I'll manage. Thank you.
judges: Bright, Bybee, Smith M.